This is a suit in which plaintiff, an electrical contractor, seeks to recover the sum of $1,058.37, alleged to be due for labor and materials furnished in electrical installations for the benefit of and by agreement with the defendant, Horace H. Guillot, a plumbing contractor doing business under the name of Acme Plumbing Company. The work is alleged to have been performed at the DeRidder Airdrome between the dates of October 21, 1942, and February 15, 1943.
Defendant answered with a denial of the several allegations of plaintiff's petition, and in reconvention sought to recover judgment against plaintiff in the sum of $1,000, alleged to have been erroneously paid. After trial there was judgment in favor of plaintiff on the main demand, and further judgment rejecting defendant's reconventional demand, from which judgment defendant appeals.
It is established that both plaintiff and defendant were sub-contractors on the DeRidder Airdrome project, one Robert Angelle being the principal contractor with the United States War Department.
Plaintiff claims the amount sued upon for labor and materials furnished to defendant in connection with the latter's plumbing contract. By way of defense against plaintiff's claims, defendant urges that there was no authorization for the furnishing of labor and materials by plaintiff; that whatever work plaintiff did was properly a part of *Page 293 
plaintiff's electrical subcontract, and that plaintiff is attempting to establish an agreement for the payment of money in excess of $500, which has not been proved in accordance with the requirements of Article 2277 of the Revised Civil Code of Louisiana. It is further urged by defendant that the allegations of plaintiff's petition are inconsistent in that plaintiff alleged in Article 4 of his original petition that on October 1, 1942, he "entered into a verbal contract with said Horace H. Guillot for the furnishing of labor and equipment to install the electrical wiring and equipment pertaining to said contract which Horace H. Guillot had with Robert Angelle * * *," and that in Article 5 of said petition plaintiff alleged that on October 1, 1942, "he was authorized and instructed to furnish and install said electrical equipment, as shown on the attached itemized statement, said authorization having been given to him in writing by one O.B. Jones, Superintendent of Acme Plumbing Company, solely owned and operated by Horace H. Guillot * * *."
Plaintiff's original action was directed not only against the named defendant, but also the Great American Indemnity Company of New York, bondsman for said defendant, but on trial it was announced by counsel for plaintiff that the trial should be restricted to Horace H. Guillot, reserving plaintiff's rights against the bonding company.
[1] First, we may briefly dispose of defendant's contentions directed at the purported inconsistency of plaintiff's petition alleging both a verbal and written agreement. This point is not well founded because of the fact that the plaintiff alleged in plain words an agreement by verbal contract between plaintiff and defendant, which allegation is not in conflict with the subsequent allegation that the actual authorization and instruction for the furnishing and installation of electrical equipment was in writing. There is an obvious distinction between a general verbal agreement or contract and an authorization for the performance of the work comprehended by such agreement. We observe no conflict in the allegations as made.
[2] The contention that the work performed by plaintiff was properly a part of plaintiff's contract is conclusively disproved by the testimony in the record. It was incontrovertibly established on trial of the case that sub-contractors on construction projects frequently find themselves in need of the services of other crafts and technicians in the performance of their own contractual obligations and that it is the usual procedure under such circumstances to call for the services of such other contractors, artisans or laborers as might be necessary. This fact is so sound as a practical proposition that it would appear to our minds to admit of no refutation. It is only reasonable to conclude that this defendant, for example, in the performance of a plumbing sub-contract, would on occasion require the services of carpenters and electricians, and, certainly, such services, when furnished, which redounded to the sole benefit of the plumbing sub-contractor, and by reason of which he was enabled to carry out his own personal contract, could not by any stretch of the imagination be considered as constituting a performance of obligations by the construction and electrical contractors under their own contracts.
[3] Defendant denied any agreement with plaintiff, and further denied any authorization, but these denials he failed to sustain. On the contrary, plaintiff established these facts beyond any question. Included in the record is a document so conclusive in its effect that we think it desirable to quote the same in full, as follows:
"DeRidder, Louisiana "October 1, 1942
"Mr. W.J. Edgerly "Electrical Contractor
"You are hereby authorized to install the electrical wiring pertaining to our part of the contract of the DeRidder Air Port, Contract #W-1096, Eng. 8520.
"(Signed) O.B. Jones "O.B. Jones, Superintend- ent Acme Plumbing Com- pany Bunkie, Louisiana."
It is true that on the stand, under cross-examination, defendant denied the authority of O.B. Jones, and further denied his *Page 294 
status as superintendent of the Acme Plumbing Company on the DeRidder project, but these denials are overcome, not only by the testimony of the plaintiff and the testimony of Mr. O.B. Jones himself, but by the inescapable conclusions which must be drawn from the testimony of the defendant. Defendant admitted, under pressure of repeated questions, that Jones was authorized to order materials and engage the services of labor. In short, implicit in defendant's testimony is the fact that Jones was in fact defendant's superintendent on the job, charged with keeping up all the details in connection therewith. Defendant himself appeared on the job only at intervals, which were frequent according to his testimony, but more or less infrequent according to the testimony of plaintiff and Jones.
We cannot refrain from commenting on the fact that we are particularly impressed with the testimony of the witness, Mr. O.B. Jones, who was called as a witness for plaintiff. Throughout his testimony it is apparent that he seeks to tell the absolute truth in connection with his conduct, and yet, with becoming loyalty, he attempts to avoid open contradiction of the testimony of defendant, his former employer.
There is some testimony to the effect that sub-contractors were required to keep a superintendent on the job at all times in default of their own presence. However this may have been, we think it has been clearly established that defendant attempted to establish the status of O.B. Jones as superintendent with regard to the job itself and yet disclaim his authority as superintendent with reference to his relations with plaintiff in procuring the performance of necessary work. Defendant is only one of a large number who have vainly attempted to have their cake and eat it, too. We are satisfied that Jones was defendant's superintendent on the job, properly clothed with the requisite authority of such a position.
In further connection with this point, we point out the significance of the authorization given by Jones in which he empowers plaintiff "to install the electrical wiringpertaining to our Part of the contract * * *."
Only one question remains for disposition, namely, the argument advanced on behalf of defendant that the contract has not been proved in accordance with the requirements of Article 2277 of the Civil Code, which provides:
"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contractsor agreements, above five hundred dollars in value, must beproved at least by one credible witness, and othercorroborative circumstances." (Italics by the Court.)
[4] The contract at issue in this case has been definitely proved in accordance with the requirements of the above article. The testimony of Mr. O.B. Jones is convincing as being that of a witness whose credibility is patent on the face of his testimony itself. The corroborating circumstances are so numerous that we deem it necessary to mention only a few.
In the discussion of the corroborating circumstances, we find it desirable, at the cost of burdening this opinion with additional details, to consider a circumstance which has particular significance.
The work sued upon was performed, as stated, between the dates of October 1, 1942, and February 15, 1943. The construction contract was completed on or about June 12, 1943, on which date Robert Angelle, the principal contractor, received payment, and at which time the sub-contractors were paid, and the amount claimed by plaintiff from the defendant, of course, became due. On July 29, 1943, by reason of the repeated importunities of plaintiff for settlement, defendant paid the sum of $1,000 to plaintiff. Defendant in this suit takes the position that the check for this amount was issued in error and that said sum was not, in fact, due and owing to plaintiff by defendant, but the testimony on trial of this case establishes the fact that this sum was paid not on the DeRidder project but in settlement of other work that plaintiff had previously performed for defendant on the Lake Charles Airport project. Plaintiff correctly applied the payment *Page 295 
to such indebtedness, acknowledging an overpayment in the sum of $24.46, which he promptly credited on the amount claimed to be due on the DeRidder project.
Defendant attempts to disclaim any obligation of any kind to plaintiff either on the Lake Charles or the DeRidder project, and on this ground seeks the return, by way of reconvention, of the sum of $1,000 paid as above set forth. The testimony of defendant himself, as touching these claims, is so unconvincing, contradictory and improbable as to clearly indicate that he is mistaken on this point.
By letter of February 9, 1944, Mr. A.P. Frymire, attorney of New Orleans, called upon defendant and his bonding company for payment of the Edgerly account, attaching to said letter a sworn itemized statement. This letter was answered by defendant's attorney under date of February 26, 1944, in which the attorney advised that he understood from his client, Mr. Guillot, that he was then in process of arriving at a settlement with Mr. Edgerly. Apparently no further steps were taken on the part of the defendant to press for conclusion and settlement of the matter of his differences with plaintiff, nor is there any evidence in the record supporting his claim of an erroneous payment or of a denial of any obligation whatsoever to plaintiff.
It is almost inconceivable that defendant would make a payment in July of 1943 of the substantial amount of $1,000, which was not due, and take no action for the recovery thereof for a period of seven months. Nor do we think it likely that, being called upon for settlement on another project, this defendant would fail to at least make known his claims by way of offset. True it is that defendant testified that he was acting on the advice of his counsel, which statement is substantiated in brief of defendant's distinguished counsel. But, it is apparent that this advice of counsel must have been given subsequent to the demand made by plaintiff's attorney in February, 1944, and, therefore, has no bearing upon the conclusions which must be drawn from the long period of inaction on the part of defendant following his alleged mistaken payment of the sum of $1,000.
[5] These circumstances and the application of recognized customs of conduct, viewed in the light of reasonable interpretation, not only completely fail to sustain defendant's contentions, but, on the contrary, incline most strongly to establish the claims of plaintiff.
A determination of this matter is made comparatively easy by a brief summary of the facts which we regard as having been established beyond any question, a conclusion which must have been reached by the learned Judge of the district Court, as follows:
Both plaintiff and defendant were subcontractors on War Department construction projects.
Plaintiff furnished labor and materials and electrical installations for the benefit of defendant in carrying out defendant's sub-contract on the Lake Charles Airport project, and, subsequently, on the DeRidder Airport project.
Plaintiff's services on the DeRidder project for the benefit of defendant were completed on or about February 15, 1943.
The sum of $1,000 was paid plaintiff by defendant on July 29, 1943, which sum was applied in its entirety to full settlement of plaintiff's account on the Lake Charles project, with the exception of $24.46 which was credited to defendant on his account with plaintiff on the DeRidder project.
Failing to secure settlement of his claim, plaintiff, through counsel, on February 9, 1944, made formal demand on defendant and his bonding company for settlement.
Failing to procure any settlement in response to this formal demand, plaintiff instituted this suit for the balance of $1,058.36 remaining due on the DeRidder Airport account.
In establishing his agreement with defendant, in addition to his own testimony, plaintiff produced the testimony of one credible witness in the person of O.B. Jones, defendant's superintendent, this testimony being corroborated by circumstances evidenced not only in the testimony of witnesses, but in the exhibits filed upon trial in connection with plaintiff's claim. *Page 296 
Defendant completely failed to substantiate his reconventional demand for the return of the sum of $1,000 allegedly paid in error.
For the reasons set forth, the judgment appealed from is affirmed at appellant's cost.